Default Document Processing
MAC N9286-01Y
1000 Blue Gentian Road
Eagan, MN 55121-7700

WELLS FARGO

10/24/2019

NILAM V PATEL ,
6035 Snapdragon Court
Bensalem, PA 19020

THIS PAGE INTENTIONALLY LEFT BLANK

**Fill in this information to identify the case:**

Debtor 1  NILAM V PATEL

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Eastern District Of Pennsylvania

Case number  1916366

Official Form 410S1

# Notice of Mortgage Payment Change

12/15

If the debtor's plan provides for payment of post-petition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due. See Bankruptcy Rule 3002.1.

**Name of creditor:** Wells Fargo Bank, N.A.

**Court claim no.** (if known):

**Last 4 digits** of any number you use to identify the debtor's account: 4247

**Date of payment change:**
Must be at least 21 days after date of this notice     11/17/2019

**New total payment:**     $ 444.14
Principal, interest, and escrow, if any

## Part 1: Escrow Account Payment Adjustment

1. **Will there be a change in the debtor's escrow account payment?**

   ☑ No
   ☐ Yes. Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why:

   Current escrow payment:  $_____     New escrow payment:  $_____

## Part 2: Mortgage Payment Adjustment

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate in the debtor's variable-rate note?**

   ☐ No
   ☑ Yes. Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: Rate change disclosed in original note agreement.

   Current interest rate:  4.75000%     New interest rate:  4.50000%

   Current principal and interest payment: $468.81     New principal and interest payment: $444.14

## Part 3: Other Payment Change

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**

   ☐ No
   ☑ Yes. Attach a copy of any documents describing the basis for the change, such as a repayment plan or loan modification agreement. (*Court approval may be required before the payment change can take effect.*)

   Reason for change: Payment change due to cycle date.

   Current mortgage payment: $468.81     New mortgage payment: $444.14

178396858

| Debtor 1 | NILAM V PATEL | | | Case number *(if known)* 1916366 |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

## Part 4:  Sign Here

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☑ I am the creditor.

☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

/s/ Ashley  Britton                                                                                              Date  10/24/2019
Signature

Print:    Ashley  Britton                                                            Title    Vice President Loan Documentation
          First Name      Middle Name      Last Name

Company    Wells Fargo Bank N.A.

Address    1000 Blue Gentian Road,  N9286-01Y
           Number            Street

           Eagan, MN 55121-7700
           City                                    State        ZIP Code

Contact phone    ( 877 )  891 – 0002                    Email  noticeofpaymentchangeinquiries@wellsfargo.com

178396858

# UNITED STATES BANKRUPTCY COURT

Eastern District Of Pennsylvania

Chapter 13 No. 1916366

In re:
NILAM V PATEL ,

## CERTIFICATE OF SERVICE

I hereby certify that on or before **10/24/2019**, I served a copy of this Notice and all attachments upon each of the entities named below by the court's notice of electronic filing or by placing a copy thereof in an envelope, in the United States Mail with first class mail postage prepaid, addressed to each of them as follows:

Debtor:
    By U.S. Postal Service First Class Mail Postage Prepaid:
    NILAM V PATEL ,
    6035 Snapdragon Court
    Bensalem, PA 19020

Debtor's Attorney:
    By Electronic Court Filing:
    BRAD J. SADEK
    1315 Walnut Street
    Suite 502
    Philadelphia, PA  19107

Trustee:
    By Electronic Court Filing:
    WILLIAM C. MILLER, ESQ.
    P.O. Box 1229
    Philadelphia, PA 19105

/s/ Ashley Britton

178396858

# Wachovia Bank, National Association
## Prime Equity Line of Credit Agreement & Disclosure Statement

Date of Agreement: **November 9, 2006**

Maximum Credit Limit: $ **118800.00**

Borrower(s)

**VIJAY B PATEL**

**NILAM V PATEL**

The Prime Equity Line of Credit Agreement & Disclosure Statement ("Agreement") contains the terms that apply to the Prime Equity Line of Credit Account ("Account") with Wachovia Bank, National Association. The words "I," "me," and "my," which also mean "we," "us," and "our," if more than one Borrower, mean the person or persons signing this Agreement. The words "you," "your," and "yours" mean Wachovia Bank, National Association ("Wachovia Bank, N.A.").

**PROMISE TO PAY.** I promise to pay to Wachovia Bank, N.A., the total amount of all credit extended under the terms of this Agreement ("Advances") and Finance Charges, as well as all other charges for which I am responsible under this Agreement or under the Security Instrument, which secures my Account. I agree to make payments on my Account in accordance with the terms of this Agreement. If there are multiple Borrowers, each is jointly and severally liable for the total amount due under this Agreement. This means you can require any Borrower to pay all amounts due under this Agreement, including Advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Account, to request and receive Advances, and to do all other things necessary to carry out the terms of this Agreement. You may, but are not required to, release any Borrower from responsibility under this Agreement. If you release any Borrower from responsibility, all other Borrowers will remain liable.

**MATURITY DATE, DRAW PERIOD AND POST DRAW PERIOD.** The term of my Credit Line begins as of the date of this Agreement and will continue until **11/08/36** ("Maturity Date") at which time all indebtedness under this Agreement, if not already paid, will be due and payable. Except as provided herein and unless terminated earlier in accordance with the terms of this Agreement, I may obtain Advances under the terms of this Agreement for fifteen (15) years from the date of this Agreement ("Draw Period"). The Post Draw Period begins upon expiration of the Draw Period and extends for fifteen (15) years to the Maturity Date. During the Post Draw Period, I will no longer be able to obtain Advances.

**MAXIMUM CREDIT LIMIT.** My Maximum Credit Limit is indicated above. This is the maximum amount I can have outstanding at any one time. I agree never to allow the Outstanding Balance due on my Account to exceed the Maximum Credit Limit. I also agree that you are not obligated to pay any Advance or other charge against my Account that would make my Outstanding Balance exceed my Maximum Credit Limit. I agree to immediately repay, upon demand, any Outstanding Balance that exceeds the Maximum Credit Limit established hereunder. My Maximum Credit Limit will not be increased if I overdraw my Account. Any portion of the Outstanding Balance in excess of my Maximum Credit Limit will not be secured by the security instrument covering my principal residence.

For purposes of this Agreement, the term "Outstanding Balance" includes all unpaid Advances, accrued but unpaid Finance Charges and accrued but unpaid Fees permitted to be charged to my Account under the terms of this Agreement or the Security Instrument.

Any increases in my Maximum Credit Limit I request will require that a new application be approved in accordance with your then applicable underwriting standards and I must sign any additional agreements that in your opinion are necessary to secure your interest.

**PAYMENT SCHEDULE.** During the Draw Period, I agree to pay the minimum monthly payment not later than the payment due date shown on my periodic statement as follows:

☒ Payment <u>Option A</u>: I will make a minimum monthly payment equal to the greater of the Finance Charge on the outstanding Advances plus accrued but unpaid Fees or $50.00; OR
☐ Payment <u>Option B</u>: I will make a minimum monthly payment of the greater of 1.5% of the Outstanding Balance (rounded up to the nearest whole dollar amount) shown on my Statement or $50.00.

If, at any time, the Outstanding Balance is less than $50.00, the minimum monthly payment will be the Outstanding Balance.

Under either Payment Option A or Payment Option B, the Total Minimum Payment Due amount means and will include any amount of any Advance(s) that exceed the Maximum Credit Limit, as well as any credit insurance premiums, fees and/or charges assessed during the current billing cycle and any past due amounts previously billed. Failure to pay the Total Minimum Payment Due or New Minimum Payment Due amount as reflected on the periodic statement will result in Account default as more fully described in the Default/Termination section of this Agreement and will result in the assessment of a Late Fee in accordance with the provisions of the Late Fee section of this Agreement.

I may change my minimum monthly payment option to either payment option listed above during the Draw Period subject to your approval. All such requests must be made in writing signed by all Borrowers addressed to Lender at the address obtained from Customer Service by calling 1-800-249-3869. Any such request to change the minimum payment option will be effective upon receipt as long as received at least one (1) business day prior to the end of the current billing cycle. A change in the **ANNUAL PERCENTAGE RATE** can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, so more of my payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance creating a larger Outstanding Balance at the end of the Draw Period.

During the Post Draw Period I will make monthly payments calculated as follows: my monthly payment will be based on the Advances outstanding as of the end of the Draw Period, excluding any advances that have been converted to a Fixed Rate Option as described below. The monthly payment during the Post Draw Period will consist of 1/180th of the outstanding Advances, plus Finance Charges (calculated in accordance with the Finance Charges On My Account Balance section of this Agreement) and other charges imposed on my Account. Any accrued Finance Charges or other charges outstanding at the end of the Draw Period will be due and payable at that time and will be billed on the next periodic statement and will be due in addition to the first regular monthly payment amount during the Post Draw Period. If, at any time during the Post Draw Period, my Fixed Rate Option (if applicable) is terminated by either me or you, the amount of accrued Finance Charges related to the Fixed Rate Option balance will be added to the Finance Charges included in the monthly payment as described above.

**APPLICATION OF PAYMENTS.** Promotional Advances and Finance Charges refer to offers to use my Account on special terms that you may make to me from time to time; you will provide the terms of any promotional Advance or promotional Finance Charge at the time that you make the offer available. Unless otherwise prohibited by applicable law, payments will be applied in the following order: First, to the accrued but unpaid promotional Finance Charges due; next to non-promotional Finance Charges due; then to credit insurance premiums, then any Fees that have been charged in accordance with the terms of this Agreement. The remainder of any payment will be applied first to any unpaid promotional Advances and then to any non-promotional Advances.

**OPTIONAL CREDIT INSURANCE.** I understand that credit life insurance is not required, and that I may cancel at any time by giving written notice to you. If I have selected optional credit insurance offered by you in connection with this Account and I fail to include the premium amount in my monthly payment, I hereby authorize you to charge my Account for such credit insurance premiums that remain unpaid. Any amount so charged to my Account will be a credit Advance and will decrease the funds available, if any, under the Account, but shall not accrue Finance Charges. Each month the insurance premium will be calculated by multiplying the average daily balance by the premium option I have selected. You have the right to change the premium rate by giving me notice of this action thirty (30) days prior to the effective date. The new rate will apply only to the charges for insurance made after the date of the rate change. I understand that the actual total premium amount I pay will depend upon my payment record.

I may cancel the insurance coverage at any time by telephoning you at 1-877-363-1103 or writing to you at Wachovia Bank, N.A., Credit Insurance NC6952, 100 N. Main St., Winston-Salem, NC 27101. Such cancellation will not entitle me to a refund of premiums advanced prior to such cancellation. If my credit insurance is cancelled, no further portion of any payments I make will be applied to credit insurance premiums.

**RECEIPT OF PAYMENTS.** I will make my payments in U.S. funds payable to you at the address you provide to me or at a different address if required by you. I understand that there may be a delay in posting the payment to my Account if my payment is not sent to the address shown on my periodic statement.

**PREPAYMENT.**
(A) Subject to the order of application of payments described above, I have the right to make payments of principal at any time before they are due. A prepayment of all unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."
(B) If I make a payment that is more than the minimum monthly payment amount, the amount in excess of the amount due is called an "Excess Payment." If I make an Excess Payment, you will assume that I want to reduce or skip my next scheduled payment(s). If the Excess Payment is less than or equal to the next scheduled payment, the next scheduled payment will be reduced by the amount of the Excess Payment. If the Excess Payment exceeds the amount of my next scheduled payment, the number of payments that may be skipped will be determined by subtracting each subsequently scheduled payment from the Excess Payment. So long as the remaining portion of the Excess Payment exceeds the next scheduled payment amount, that payment may be skipped. When the remaining portion of the Excess Payment is equal to or less than my next scheduled payment, that remaining portion will be used to reduce the amount of the next scheduled payment. If I want you to handle an Excess Payment differently, I will tell you in writing. I understand that Finance Charges will continue to accrue on the outstanding principal balance and that if I want maximum interest savings from Excess Payments, I should continue to make payments on or before the scheduled due date. Excess Payments may advance the due date up to two (2) scheduled payments.
(C) If I choose to transfer any or all of my balance to a Fixed Rate Option, Excess Payments will no longer advance the due date and I will be billed the full amount of the calculated minimum monthly payment due regardless of the amount of my Excess Payment.
(D) Exclusions. The prepayment feature is not available for accounts set up for automatic draft, for accounts in overlimit status, or accounts that are blocked from usage for any reason.

**CREDIT ADVANCES.** Wachovia Bank, N.A. will establish an Account and issue to me Prime Equity Line Checks and if applicable law permits, a Credit Card Access Device ("Card"). The Prime Equity Line Checks and Card can be used to obtain Advances from my Account during the Draw Period, up to the amount of the Maximum Credit Limit established in this Agreement. I may also request Advances in person at any of your authorized locations. I may also use my Card to receive cash advances, make purchases or I may use my Card at designated ATM locations. If I enroll in your On-Line Banking service and agree to the terms of your On-Line Agreement, I may use the On-Line Banking service to initiate electronic fund transfers from my Account to any deposit account I have designated for inclusion in the On-Line Banking service. I may also link my Wachovia Bank Demand Deposit Account ("DDA") debit card ("Debit Card") to access my Account at designated ATMs to allow transfers between my DDA and my Account and payments from my DDA to my Account. Wachovia Bank, N.A. will charge all Advances obtained under the terms of this Agreement to my Account. Advances made pursuant to Prime Equity Line Checks will be for the amount of the Prime Equity Line Check. Advances made pursuant to the use of a Card will be for the amount of the purchase or for the amount of the Advance obtained with the Card or the Debit Card at any ATM or other outlet plus any fees charged by the ATM owner or merchant.

Any credit card issued as an access device in connection with this Agreement is NOT a debit card. "Card" as used in this Agreement means the VISA® card that may be issued as an access device to my Account. VISA is a registered service mark of Visa U.S.A., Inc.

You may charge my Account to pay other fees and costs that I am obligated to pay under this Agreement, the Security Instrument or any other document related to the Account. In addition, you may charge my Account for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Security

Instrument for this transaction. You may also, at your option, charge my Account to pay any costs or expenses to protect or perfect your security interest in the Property as defined herein. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on the Property. If I do not pay my property taxes, you may charge my Credit Line and pay the delinquent taxes. Any amount so charged to my Account will be a credit Advance and will decrease the funds available, if any, under the Account. You have no obligation, however, to provide any of the credit Advances referred to in this paragraph and will incur no liability if you choose not to make such advances.

If I have a demand deposit account ("DDA") with you, I may request you to provide overdraft protection for such DDA by authorizing you to link my DDA to this Account as described in this paragraph, where permitted by law. (This overdraft protection feature is not available if the Property is located in the states of New York or Connecticut). Overdraft Advances obtained pursuant to such linking of a DDA account may be made in increments of $100.00. The overdraft protection feature works as follows: If the closing daily balance of available funds in the linked DDA account is less than $0.00, I hereby authorize and request you to make Advances to me under this Account, in increments of $100.00, in an amount sufficient to create a positive balance of available funds in the DDA (with such Advances subject in all events to the available Credit Limit of the Account and to all other terms and conditions of the DDA and this Agreement). Each Advance made to me under the overdraft protection linked arrangement will be treated for all purposes as a loan to me under this Agreement. The availability of Advances under this Agreement and the linked arrangement will expire when the Draw Period expires. I understand and agree that I may be charged a fee under the terms and conditions of my DDA upon the occurrence of any overdraft.

I agree that from time to time Wachovia Bank, N.A. may establish other means of obtaining Advances from my Account, as permitted by applicable law, and that my signature on this Agreement constitutes my request to receive such new services. I may reject or refuse such new services at the time they are offered. I understand that all such Advances made using such services will be governed by the terms of this Agreement.

If there is more than one Borrower, we agree not to give you conflicting instructions, such as one of us telling you not to honor Advances requested by another.

I agree that any Prime Equity Line Checks or Cards that you supply to me are your property and must be returned to you immediately upon demand if I am in Default of this Agreement or my Advance privileges are terminated or suspended in accordance with the terms of this Agreement.

**LIMITATIONS ON THE USE OF ACCESS DEVICES.** I understand that you reserve the right not to honor requests for Advances in the following circumstances:

(1) Credit Limit Violation. Payment of the Advance would cause me to exceed my Maximum Credit Limit or I have exceeded my Maximum Credit Limit at the time of the request;
(2) Post Dated Checks. If you pay a post dated check and as a result, any other check is returned or not paid, you are not responsible for any losses or damages I may incur;
(3) Stolen Access Devices. My Prime Equity Line Checks or Card is reported lost or stolen;
(4) Termination or Suspension. My Account has been, or could be, terminated or suspended as provided in this Agreement if you honored the request; or
(5) Unauthorized Use. My access device is used by someone other than a Borrower.

If you pay any Advance requested under these conditions, I agree to repay you, subject to applicable laws, for the amount of the Advance. The Advance itself will be evidence of my debt to you together with this Agreement. Your liability, if any, for wrongful dishonor of an Advance is limited to my actual damages. Dishonor for any reasons as provided in this Agreement is not wrongful dishonor.

**TRANSACTION LIMITATIONS.** The following transaction limitations currently apply to my use of the Account: I may make a maximum of six (6) cash transactions per day from my Account by use of my Card not to exceed my available credit limit. These cash transactions may either be Point of Sale ("POS") cash transactions, ATM cash transactions, or a combination of both. The current transaction limit for Point of Sale cash transactions is $99,999.99. The current single transaction limit for ATM cash transactions is $2,500.00, with a daily transaction limit of $15,000.00. The number of daily non-cash transactions that are allowed may also be limited, but for security reasons this number is kept confidential. In addition, the daily transactions limits described above are subject to change from time to time.

**ATM ACCESS LIMITATIONS.** Transactions conducted at ATMs are governed by the limitations of the individual ATM owners and may be subject to ATM fees and transaction limitations imposed by the ATM owner.

**ILLEGAL ACTIVITIES AND CARD USE.** I agree not to use my Card or Account to engage in activities deemed illegal by federal and/or state laws. If I use my Card to engage in certain activities deemed illegal by federal and/or state laws, I understand that I will nevertheless be liable for any unauthorized transactions made by the use of my Card.

**LOST ACCESS DEVICES.** If I lose my Prime Equity Line Checks or Card or if someone is using them without my permission, I agree to let you know immediately. The fastest way to notify you is by calling you at 1-800-249-3869.

**LIABILITY FOR UNAUTHORIZED USE OF CREDIT CARD.** I agree to notify you immediately if my VISA Card has been lost or stolen or if unauthorized use has occurred or may occur. Telephoning is the best way of minimizing possible losses. I may make this notice by calling 1-800-249-3869 or by writing to Wachovia Bank, N.A., P.O. Box 563966, Charlotte, NC 28256-3966.

I agree to assist you in determining the facts, circumstances and other pertinent information relating to any loss, theft or possible unauthorized use of my Card and to comply with such procedures as you may require in connection with your investigation. I will not be liable for the unauthorized use of my Card that occurs after I notify you orally or in writing of the loss, theft or possible unauthorized use of my Card. My liability for the unauthorized use of my Card when it is used as a VISA Credit Card to access my Account will not exceed $0.00. You may require me to provide a written statement regarding claims of unauthorized VISA Card transactions. My liability for unauthorized transactions may exceed the $0.00 limit if you find that I was grossly negligent or fraudulent in my handling of my Account or my Card. In any case, my liability for unauthorized use of my Card for VISA Card transactions will not exceed $50.00.

**COLLATERAL.** I acknowledge this Agreement is secured by a Security Instrument on real property (the "Property") located at <u>6035 SNAPDRAGON COURT</u>                                                                 <u>BENSALEM PA   19020</u>
as more fully described in the Security Instrument dated the same date as this Agreement. The Security Instrument protects you from possible losses which might result if I do not keep the promises which I make in this Agreement. The Security Instrument describes how and under what conditions I may also be required to make immediate payment in full of all amounts I owe under this Agreement.

If the Property is located in California, my security instrument contains the following due on sale provision:

**"Transfer of the Property of a Beneficial Interest in Trustor.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Trustor at a future date to a purchaser. **If all or any part of the Property or any interest in the property is sold or transferred (or if Trustor is not a natural person and a beneficial interest in Trustor is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.**

If Lender exercises this option, Lender shall give Trustor notice of acceleration (and shall notify Borrower as well, if no Trustor is a Borrower). The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which all sums secured by this Security Instrument must be paid. If these sums are not paid to Lender prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower or Trustor."

**LOAN SECURITY AGREEMENT.** If the collateral for this Account is a co-operative unit located in the state of New York, the foregoing COLLATERAL paragraph will not apply and the following paragraph is substituted therefore. To secure payment of all sums due or which become due under this Agreement, and my performance of all other terms of this Agreement, I grant you a security interest in (1) the property described in the Loan Security Agreement, (2) my rights to refunds of premiums for and payments under, and proceeds of any insurance purchased with the proceeds of this Agreement, and (3) proceeds and products of all of the foregoing (collectively, the "Property"). Your security interest shall remain in effect until I have paid in full all amounts due under the Agreement and the Loan Security Agreement. Despite any other provision of this Agreement or the Loan Security Agreement, however, you are not granted, and will not have, a non-purchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law.

**OBLIGATION TO LEND.** During the Draw Period, subject to the terms of this Agreement, including, but not limited to, the Limitations on Access Device section above, and subject to applicable law, you are obligated under the terms of this Agreement to make advances not to exceed, at any one time in the aggregate, the amount indicated as the Maximum Credit Limit and I agree to repay any Advances under the terms of this Agreement. Your obligation to make Advances to me under this Agreement ends when the right to obtain Advances terminates at the end of the Draw Period or when such Advance privileges are suspended or terminated in accordance with the terms of this Agreement.

**FINANCE CHARGE ON MY ACCOUNT BALANCE.**
(a) My Account has a monthly billing cycle. A Finance Charge computed on a monthly periodic rate will be imposed if there is a balance owing on my Account at the end of any day of the billing cycle. The monthly periodic rate for an initial Advance, if any, made by me will begin to accrue on the date such Advance is made. The monthly periodic rate for any Advance other than an initial Advance will begin to accrue on the Transaction Date as indicated on my billing Statement.
(b) You will figure the Finance Charge on my Account by applying the monthly periodic rate to the "average daily balance" owing on my Account (including transactions occurring during the current billing cycle). To calculate the "average daily balance", you will take the beginning balance of my Account each day, add any new Advances charged to the Account pursuant to the terms of this Agreement, and subtract any payments or credits, unpaid interest, credit insurance premiums, late charges and other fees. This gives you the daily balance. Then, you will add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives you the "average daily balance."
(c) The Finance Charge imposed during a billing cycle will be determined by applying the monthly periodic rate that is 1/12 of the corresponding **ANNUAL PERCENTAGE RATE** to the average daily balance. The **ANNUAL PERCENTAGE RATE** and monthly periodic rate are variable rates and may change. The "Index" is the "Prime Rate" published regularly in the "Money Rates" section of the Eastern edition of *The Wall Street Journal*.
(d) If the Prime Rate becomes unavailable, you will select a new index that is based on a historical movement substantially similar to the original Index and the new index and Margin will result in an **ANNUAL PERCENTAGE RATE** substantially similar to the rate in effect at the time the Prime Rate becomes unavailable. You will give me notice of this change.
(e) The monthly periodic rate and corresponding **ANNUAL PERCENTAGE RATE** are based on the Prime Rate as published in the Eastern edition of *The Wall Street Journal* on the 25th day of the prior calendar month plus a Margin of <u>-0.50</u> %. If more than one Prime Rate is published on the 25th day of the prior calendar month, you will use the higher rate as the Prime Rate. If the Prime Rate is not published on the 25th day of the prior calendar month, the Index will be the Prime Rate published on the preceding business day. If there is a change to the Prime Rate as of the 25th day of the month, the index will be changed as of the 1st day of the next calendar month. Adjustments to the monthly periodic rate and corresponding **ANNUAL PERCENTAGE RATE** resulting from such a rate change will be in effect for the entire billing cycle in which the rate change became effective and all future billing cycles until another such rate change becomes effective.
(f) ☒ **Initial Introductory Rate.** During the first <u>3</u> months of the Agreement, as measured from the date of the Agreement ("Initial Period"), the **ANNUAL PERCENTAGE RATE** on all Advances taken during the Initial Period will be discounted for the remaining months left in the Initial Period. During the Initial Period, the Margin will be reduced by <u>-0.50</u> %. At the end of the Initial Period, the **ANNUAL PERCENTAGE RATE on any remaining balance of Advances taken during the Initial Period** will be determined in accordance with subsection (e) above. For balances covered by the Initial Introductory Rate the initial monthly periodic rate of <u>0.604</u> % will apply to my average daily balance during my first billing cycle and the initial corresponding **ANNUAL PERCENTAGE RATE** will be <u>7.25</u> %.

OR

☐ **Lifetime Introductory Rate.** Draws made during the first thirty (30) days of the Agreement, as measured from the date of the Agreement ("Initial Period") will accrue interest at a discounted rate for the life of the aggregate combined Advances taken during said Initial Period. During the life of said aggregate combined Advances, the Margin used to calculate Finance Charges on said Advances will be reduced by 0.00 %. For balances that qualify for the Lifetime Introductory Rate, the initial monthly periodic rate of 0.000 % will apply to my average daily balance during my first billing cycle and the initial corresponding **ANNUAL PERCENTAGE RATE** will be 0.00 %.

OR

☐ **No Introductory Rate Available.**

(g) Assuming that the **discounted ANNUAL PERCENTAGE RATE** referred to above in subsection (f) is not in effect, the initial monthly periodic rate of 0.646 % will apply to my average daily balance during my first billing cycle and the initial corresponding **ANNUAL PERCENTAGE RATE** will be 7.750 %. An increase in the **ANNUAL PERCENTAGE RATE** and monthly periodic rate will result in increased Finance Charges and minimum payment amounts. The corresponding **ANNUAL PERCENTAGE RATE** for each billing cycle will be shown on my billing statement for that cycle. The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

Note: The rate disclosed in this subparagraph takes into account any discounts available for relationship, pricing, auto debit selection and/or closing costs options.

(h) The maximum **ANNUAL PERCENTAGE RATE** will never exceed eighteen percent (18%). The **ANNUAL PERCENTAGE RATE** will never be less than zero percent (0%).

(i) I also agree to pay the additional Finance Charges not calculated by applying a periodic rate, as set forth below:

Flood Fee of $ 15.00 . If I pay a Flood Fee for flood zone determination and monitoring, this fee is included as an additional Finance Charge in this Agreement and this amount is charged as an Advance in connection with the opening of my Account. I also agree that Finance Charges provided for in this paragraph are non-refundable. I also acknowledge and agree that the flood service is obtained by you solely to protect your interest in the collateral and that your use of any such service does not create any additional obligation on our part or create any duty on you, except as expressly agreed to by you or created by applicable law.

Settlement Fee of $ 0.00 . If I pay a Settlement Fee for a third party closing, this fee is included as an additional Finance Charge in this Agreement and is charged as an Advance in connection with the opening of my Account.

☒ **TERMINATION OF AUTHORIZATION TO DRAFT.** If this box is checked, my initial periodic rate and corresponding **ANNUAL PERCENTAGE RATE** are based on the assumption that I will maintain an Authorization to Draft Agreement in place, which agreement allows you to automatically draft my Wachovia deposit account to make my regularly scheduled minimum monthly payments. The Margin on my Account will be increased by −0.10 % if I terminate this authorization or if you terminate the Authorization to Draft in accordance with the terms of that agreement. This will result in an increase in my periodic rate and the corresponding **ANNUAL PERCENTAGE RATE**.

**OTHER CHARGES.** In addition to the **FINANCE CHARGE** which will be added to my Account each billing cycle, I agree to pay the following Finance Charges and other real estate closing and security filing charges, except for those Other Charges marked with an "X" which I request that you pay:

| "X" = Wachovia Bank, N.A. Pays Charge | | "X" = Wachovia Bank, N.A. Pays Charge | |
|---|---|---|---|
| Survey | $ 0.00 | Documentary Stamp Tax/Fee | $ 0.00 |
| Title Examination | $ 0.00 | Georgia Mortgage Tax | $ 0.00 |
| Title Insurance | $ 0.00 | Mortgage/Recording Tax/Fee | $ 0.00 |
| Recording | $ 74.50 | Mortgage/Recording Tax/Fee | $ 0.00 |
| Appraisal | $ 0.00 | Settlement Fee* | $ 0.00 |
| Flood Fee* | $ 15.00 | Miscellaneous | $ 0.00 |
| Intangible Tax | $ 0.00 | Miscellaneous | $ 0.00 |
| Lien Protection Fee | $ 57.00 | **TOTAL** | $ **146.50** |

**WACHOVIA BANK, N.A. FEES PAID** $ 0.00     **BORROWER FEES PAID** $ **146.50**
*Finance Charge
**Any fee designated as a Finance Charge is a Finance Charge for initial disclosure purposes only if those designated items are paid by the Borrower.

**ALTERNATE PAYMENT OPTIONS.** For the purposes of this section, Alternate Payment Options may include both the Fixed Rate Option and the Rate Lock Option unless otherwise indicated. I may have no more than five (5) open Alternate Payment Options at any time. In addition to the limitation that I may only have five (5) Alternate Payment Options outstanding at any one time, I may initiate an Alternate Payment Option no more than three (3) times during any given twelve month period. At the time I request an Alternate Payment Option, you will look back over the preceding twelve (12) months to determine how many Alternate Payment Options I have taken during that period. If the number of Alternate Payment Option initiations during that period is less than three (3), I will be eligible to take another Alternate Payment Option.

I must notify Lender at 1-800-815-1722 to exercise an Alternate Payment Option. Any such exercise shall not be effective until you have received a signed Modification Agreement executed by all Borrowers on the Account.

**TYPES OF ALTERNATE PAYMENT OPTIONS AVAILABLE:**

**FIXED RATE INTEREST PAYMENT OPTION.** I have the option to convert the monthly periodic rate on all or a specified portion of my Account Outstanding Balance from the variable rate described above to a fixed monthly periodic rate and term as described herein.

My exercise of the Fixed Rate Option is subject to your written consent. During the Draw Period at any time after the first billing cycle, I can convert all or a specified portion of my Account Outstanding Balance to a fixed rate ("Fixed Rate"). The

amount of any such conversion must be no less than Five Thousand Dollars ($5,000). The term of the Fixed Rate Option must be for at least three (3) years and may not exceed thirty (30) years, not to exceed the Maturity Date.

The specified amount converted to the Fixed Rate Option is referred to herein as "Principal." I understand and agree that no further amounts can be added to the Principal amount of the Fixed Rate Option.

You shall establish the fixed monthly periodic rate and corresponding **ANNUAL PERCENTAGE RATE** and term at the time I request the conversion of a specified portion of the Account Outstanding Balance to the Fixed Rate Option based upon the term and rate available for a comparable Home Equity Loan offered by you at the time based upon a like loan to value ratio or upon a rate and term otherwise agreed. Finance Charges will be calculated on the Fixed Rate Option Principal. A complete disclosure of the terms and conditions governing the Fixed Rate Option will be provided to me in the form of a Modification Agreement/Notice of Change in Terms at the time the Fixed Rate Option is established.

The subsections of the "Finance Charge on My Account Balance" section that address and deal with the variable rate revolving portion of the Account Balance shall not apply to the Fixed Rate Option. In addition, the Principal will not be subject to or governed by the "Accessing the Prime Equity Line" and "Payment Schedule" sections of the Agreement except as provided in the Alternate Payment Option provisions. Instead, you will calculate the fixed minimum payment due on the Fixed Rate Option by amortizing the Principal and related Finance Charges over the term selected for the Fixed Rate Option and determine the payment amount that would be required to pay off the balance in full on the Principal and related Finance Charges in substantially equal monthly payments over the term of the Fixed Rate Option at the Fixed **ANNUAL PERCENTAGE RATE**. Therefore, the Total Minimum Payment Due on the Account each month will be the sum of the fixed payment amount for the Fixed Rate Option plus the minimum payment amount for the variable rate revolving balance of the Account calculated using the formula set forth in the Payment Schedule section of the Agreement. At the time of conversion to the Fixed Rate Option, there may be Finance Charges associated with the converted balance that have accrued but have not been paid ("Residual Interest"). The amount of the Residual Interest will be due in addition to the monthly payment amount for the Fixed Rate Option and the minimum monthly payment amount for any remaining revolving balance and will be included in the first periodic statement that includes the Fixed Rate Option payment.

Unless otherwise instructed by me, I understand and agree that you will convert to the Fixed Rate Option, portions of the Account balance starting with the balances with the highest **ANNUAL PERCENTAGE RATE**.

As the Fixed Rate Option Principal is repaid, such repaid amounts shall be added back to the amount of available credit on the variable rate revolving portion of the Account for me to draw against prior to the end of the Draw Period.

The **ANNUAL PERCENTAGE RATE** may increase if I exercise the option to terminate the fixed interest rate payment option and return the Principal to the Outstanding Balance of the Account.

If the term of a Fixed Rate Option expires prior to the end of the Account Draw Period and I still owe any amounts on said Fixed Rate Option, I will continue to make monthly payments on the Fixed Rate Option until the entire balance is paid in full.

**RATE LOCK OPTION.** I have the option to lock in all or a portion of the Outstanding Balance on the Account at a fixed **ANNUAL PERCENTAGE RATE** for a term of either three (3) or five (5) years. At the end of the selected term, the remaining balance on the Rate Lock Alternate Payment Option will be added back to the variable revolving rate Outstanding Balance.

**REPAYMENT.** I may prepay the balance on any Alternate Payment Option at any time without penalty, except you will be entitled to receive all accrued Finance Charges and other charges, if any. Payments in excess of my Minimum Payment will not relieve me of the obligation to continue to make Minimum Payments. Instead, they will reduce the Principal balance as outlined herein.

**APPLICATION OF ALTERNATE PAYMENT OPTION PAYMENTS.** Notwithstanding the order of application of payments described in the Application of Payments section above, provided interest due on all Alternate Payment Options has been paid, each payment I make on a specified Alternate Payment Option will first reduce the amount of accrued unpaid Finance Charges on said Alternate Payment Option balance, then any applicable unpaid charges and then unpaid Principal. I will make payments until I have paid all of the Principal and Finance Charges and any other fees or charges that may be assessed in connection with the Alternate Payment Option. Payments on Alternate Payment Options will be applied first to Fixed Rate Options in order of oldest to newest and then to Rate Lock Options.

If I make less than the Total Minimum Payment Due required on the periodic statement, such partial payment will be applied as follows: First to any Finance Charge due on the oldest Fixed Rate Option, then to any fees that may be due on that Fixed Rate Option, then to that Fixed Rate Option Principal. The payment will then be applied to the next oldest Fixed Rate Option in the same order. Once all Fixed Rate Option payments are satisfied, the remaining payment will be applied to the oldest Rate Lock Option, first to any Finance Charges due, then to any fees that may be due on that Rate Lock Option, then to that Rate Lock Option Principal. The payment will then be applied to the next oldest Rate Lock Option in the same order. Any remaining amounts will be applied to the variable rate revolving portion of the Account Outstanding Balance in the order described in the Application of Payments section above.

The amount of the Fixed Rate Option payment that is applied to the Principal and related Finance Charges will differ depending on when the payment is made during the billing cycle. If payments are received after the due date, even if received before the date a Late Charge is permitted to be charged, I may owe additional and substantial money at the end of the Fixed Rate Option term and there may be little or no reduction of Principal because Finance Charges continue to accrue on the Principal until payments are made.

If I have elected to have my minimum monthly payments automatically deducted from my DDA and I make additional payments to the Fixed Rate Option, my DDA will continue to be debited for the entire amount of the minimum monthly payment due as provided in the Authorization to Draft Agreement.

Additional Principal payments to the Alternate Payment Option may be made at any time but shall not affect my obligation to pay such Alternate Payment Option payments as long as any amount is still outstanding on any Alternate Payment Option.

**TERMINATION OF ALTERNATE PAYMENT OPTION BY BORROWERS.** At any time during the term of an Alternate Payment Option, I may choose to terminate an Alternate Payment Option by providing you with written instructions signed by all Borrowers. Upon such termination, the outstanding balance of said Alternate Payment Option will be added back to the variable rate revolving portion of the Account and will no longer be governed by the terms of this Addendum but will be governed by the terms of the Agreement that apply to variable interest rate and Finance Charges will accrue at the variable ANNUAL PERCENTAGE RATE described in the Agreement.

**TERMINATION OF ALTERNATE PAYMENT OPTION BY LENDER.** If at any time during the term of an Alternate Payment Option, any payment remains outstanding for 91 days or longer or any Borrower files for bankruptcy, you may terminate the Alternate Payment Option and the outstanding Principal and any accrued, but unpaid, Finance Charges on the Alternate Payment Option shall be added back to the Account variable rate revolving Outstanding Balance and shall be governed by the original terms of the Agreement.

**STATEMENT.** If I have an Outstanding Balance or a credit balance in excess of $1.00 or if there is any Finance Charge imposed during a billing cycle, you will send me a statement. I promise to pay you in accordance with the terms of this Agreement in United States Dollars drawn on an institution located in the United States. I understand I am prohibited from using an Advance to make my payments on this Account. I agree to be responsible for any fees or costs associated with the processing of my payments on my Account should I use a method of payment that results in extra costs or fees being assessed to you. The date my payment is credited to my Account may vary depending on the location and/or method of payment.

> **PAYMENT IN FULL. I AGREE THAT THE NOTE HOLDER MAY ACCEPT PAYMENTS MARKED "PAID IN FULL" WITHOUT ANY LOSS OF THE NOTE HOLDER'S RIGHTS UNDER THIS NOTE UNLESS I SEND THEM FOR SPECIAL HANDLING TO WACHOVIA BANK, N.A. EQUITY LINE SERVICES, VA 0343, PO BOX 50010, ROANOKE, VA 24022-9922. ACCEPTANCE OF ANY PAYMENT SENT TO THE SPECIAL HANDLING ADDRESS DOES NOT WAIVE THE NOTE HOLDER'S RIGHT TO SUBSEQUENTLY REJECT SUCH PAYMENT IN ACCORDANCE WITH APPLICABLE LAW.**

**LATE FEE.** If all of a minimum monthly payment is not received within ten (10) days of the due date provided on my Statement, you will impose a Late Fee of five percent (5%) of the amount of the minimum monthly payment. I agree that any Late Fee imposed by you that remains unpaid will be added to the Outstanding Balance of my Account as of the next billing cycle. Any amount so charged to my Account will decrease the funds available, if any, under the Maximum Credit Limit for my Account, but shall not accrue interest.

**RETURN ITEMS FEE.** If I make a payment to my Account by check or draft and the check or draft is returned unpaid for any reason, I agree to pay a charge of $25.00 for each returned check or draft. I agree that any Returned Items Fee imposed by you that remains unpaid will be added to the Outstanding Balance of my Account as of the next billing cycle. Any amount so charged to my Account will decrease the funds available, if any, under the Maximum Credit Limit for my Account, but shall not accrue Finance Charges.

**STOP PAYMENT FEE.** If I request you to stop payment on an Advance made with a Prime Equity Line Check, to the extent not prohibited by applicable law, I agree to pay a fee of $29.00 for each such request. I agree that any Stop Payment Fee imposed by you that remains unpaid will be added to the Outstanding Balance of my Account as of the next billing cycle. Any amount so charged to my Account will decrease the funds available, if any, under the Maximum Credit Limit for my Account, but shall not accrue interest. If the Property is located in Alabama, Maryland, New Jersey, Pennsylvania, South Carolina, or Virginia, this fee will not be charged.

**OVERLIMIT FEE.** I agree to pay a fee of $30.00 any time the Outstanding Balance on my Account exceeds the Maximum Credit Limit by two percent (2%) at any time during a given billing cycle. I agree that any Overlimit Fee imposed by you that remains unpaid will be added to the Outstanding Balance of my Account as of the next billing cycle. Any amount so charged to my Account will decrease the funds available, if any, under the Maximum Credit Limit for my Account, but shall not accrue Finance Charges.

**ADMINISTRATIVE/SERVICING FEES.** I agree that, if after closing, I request other services related to servicing or administering my Account for which you have a scheduled charge, to the extent not prohibited by applicable law, I will pay you the then current fee for such services or request if you agree to perform such services or request. I will be notified of the amount of the fee at the time that such action is requested. I agree that any such fees will be charged to my Account. When I use my Card for an international transaction in foreign currency, VISA will convert the transaction amount from the foreign currency amount to a United States Dollar amount, in accordance with its currency conversion procedures set forth in its Operating Regulations in effect at the time the transaction is processed. Currently those regulations provide that the currency exchange rate is either (1) a rate selected by VISA from the range of rates available in wholesale currency markets for other applicable central processing dates, which rate may vary from the rate VISA itself receives, or (2) a government-mandated rate in effect for the applicable central processing date. The currency exchange rate in effect on the processing date may differ from the rate in effect on the transaction date or on the posting date.

**CHANGE OF TERMS OF THIS AGREEMENT.** In addition to other rights you may have under the terms of this Agreement, you may change the terms and conditions of this Agreement when any of the following events shall occur:

 (1) If the index and margin used with this Account are no longer available;
 (2) If you make a change that I specifically agree to in writing;
 (3) If you make a change that will unequivocally benefit me throughout the remainder of the term of this Agreement; or
 (4) If you make any insignificant change in the terms of this Agreement.

**DEFAULT/TERMINATION.** I will be in Default if any of the following events shall occur:

 (1) If I fail to make my payments when they are due;
 (2) If I have engaged in fraud or material misrepresentation in connection with my Account;
 (3) If my action or inaction adversely affects the Property or your rights in the Property or I am in breach of any term of the Security Instrument.

If I am in Default under the terms of this Agreement, you may, at your option and in your sole discretion, take the following action:

(1) Terminate my Advance privileges and demand the Outstanding Balance to be due and payable immediately in full in a single payment, with interest due on the Outstanding Balance at the **ANNUAL PERCENTAGE RATE** as provided for in this Agreement until paid; or
(2) Temporarily or permanently prohibit additional Advances or reduce the Maximum Credit Limit without demanding payment in full.

If you do not immediately terminate the Advance privileges and demand repayment of the Outstanding Balance, such action shall not constitute a waiver of your right to subsequently terminate the Account or demand repayment of the Outstanding Balance at a later time, if the event of Default still exists or another event of Default occurs at that time.

If I am in Default under the terms of this Agreement, you may take all lawful action under applicable law to collect the money I owe you. Any Default of this Agreement will also constitute an event of Default of the Security Instrument securing my performance of the obligations set forth in this Agreement. Upon Default, you may proceed to enforce the terms of this Agreement or enforce any rights that you may have under the Security Instrument.

**COLLECTIONS EXPENSES AND ATTORNEYS' FEES.** In the event of Default and to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Agreement. The following subsections apply to the extent this Agreement is governed by the laws of the jurisdiction referenced in the subsection header or text:
(a) Florida. To the extent permitted by law, these expenses include, but are not limited to, attorneys' fees of 10% of the principal sum due or a larger amount as a court judges as reasonable and just, courts costs and other legal expenses.
(b) California. To the extent permitted by Cal. Civ. Code Section 2824c.
(c) Other. If this Agreement is governed by the laws of a jurisdiction other than those referenced in the subsection headers above, to the extent permitted by law, these expenses include, but are not limited to, your reasonable attorneys' fees not exceeding 15% of the Outstanding Balance for an attorney who is not your salaried employee, court costs and other legal expenses.

**"DEFAULT IN THE PAYMENT OF THE LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THIS LOAN. UNDER FEDERAL LAW, I MAY HAVE THE RIGHT TO CANCEL THIS LOAN. IF I HAVE THIS RIGHT, THE LENDER IS REQUIRED TO PROVIDE ME WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH I CAN EXERCISE THIS RIGHT."**

**SUSPENSION AND/OR REDUCTION OF CREDIT LIMIT.** I agree that you may prohibit additional Advances or reduce the Maximum Credit Limit when any of the following events shall occur:
(1) If the value of the Property that secures this Agreement declines significantly below the Property's appraised value during the time of this Agreement;
(2) If you reasonably believe I will be unable to fulfill the repayment obligations under this Agreement due to a material change in my financial circumstances;
(3) If I am in Default of any material obligations under this Agreement, such material obligations include, but are not limited to, all of my promises in this Agreement regarding the payment of money to you and the preservation of your rights in the Property;
(4) If action by a governmental body does not allow you to impose the **ANNUAL PERCENTAGE RATE** currently applicable to this Agreement;
(5) If action by a governmental body adversely affects the priority of your Security Instrument to the extent that the value of the security interest is less than 120 percent of the amount of my Maximum Credit Limit;
(6) If you are notified by a governmental agency that regulates your lending activities that continuing Advances constitutes an unsafe and unsound practice;
(7) If during any period in which the **ANNUAL PERCENTAGE RATE** corresponding to the monthly periodic rate reaches the maximum interest rate allowed under this Agreement. Provided I am in compliance with the other terms of this Agreement, I understand you will reinstate credit privileges if the **ANNUAL PERCENTAGE RATE** declines below the maximum **ANNUAL PERCENTAGE RATE**; or
(8) If I request that you suspend any Advance or reduce the Maximum Credit Limit.

If you suspend Advances or reduce the Maximum Credit Limit, I understand you will mail or deliver written notice of your action no later than three business days after the action and that such notice will contain the specific reason for the action.

**REINSTATEMENT OF ADVANCE PRIVILEGES.** Except as provided for in this Agreement, I understand that if my Advance privileges are suspended or my Maximum Credit Limit is reduced, it is my responsibility to request reinstatement of my Advance privileges that have been suspended. If I request reinstatement of my Advance Privileges, I further understand that I may be required to pay for an appraisal of the Property to determine if the value has changed.

**TERMINATION BY LESS THAN ALL BORROWERS.** If one or more persons are liable under the terms of this Agreement and any of said persons request in writing to Wachovia Bank, N.A., Line of Credit Services, VA 0343, PO Box 50010, Roanoke, VA 24022-9922 (or any person may call Customer Service at 1-800-249-3869 for more information about additional options) that future Advances be terminated or temporarily suspended hereunder, you will block and otherwise suspend further Advance privileges. Upon receipt of such notice from one or all of us, you will provide written notice to all Borrowers that the Advance privileges have been suspended. I understand that said Advance privileges will not be reinstated by you until you receive a written request from all persons liable on this Account requesting reinstatement of the Advance privileges I further agree that any request to grant reinstatement will be made at your sole discretion in accordance with your policies in effect at the time such request is made.

I understand that during the time of any such suspension or termination that I must continue to abide by the terms of the Agreement including, but not limited to the Payment Schedule.

**VOLUNTARY TERMINATION.** I can cancel my Account at any time by destroying all of my unused Prime Equity Line Checks and any Card Access Devices that may have been issued in connection with my Account and by sending you a signed letter requesting that you cancel my Account. I understand that my obligations under this Agreement and any changes made under it prior to cancellation will continue to apply until I have completely paid the Outstanding Balance on the Account.

**BORROWERS CHANGE OF ADDRESS.** I will advise you promptly if I change my mailing address or if I sell the Property securing this Account by mailing notice to Wachovia Bank, N.A. Attention: Line of Credit Services VA0343, PO Box 50010, Roanoke, VA 24022-9922.

**BANK NOTICES.** All written notices and statements from you to me will be considered given when placed in the United States mail, postage paid, and addressed to me at my current address as it appears in your records. If this is a joint Account, written notice to one person is notice to all persons.

**REQUIRED PROPERTY AND FLOOD INSURANCE.** I agree to purchase or cause to be purchased and to continue to maintain or cause to be maintained property hazard insurance on the secured Property. I agree to purchase or cause to be purchased and to continue to maintain or cause to be maintained flood insurance on the secured Property in an amount not less than the entire Maximum Credit Limit, or in an amount equal to the sum of all outstanding liens on the Property or the maximum amount permitted by law. I understand I may purchase required property and flood insurance from anyone I choose who is acceptable to you. I agree that in the event I am required to purchase property and/or flood insurance and fail to do so that, subject to applicable law, you may purchase said insurance to protect your own interest and add the amount of the premium to my then Outstanding Balance, or pursue any other remedies available to you. I agree that you have an irrevocable power of attorney to file proofs of loss or other insurance claims and to take any other actions you deem necessary to obtain insurance proceeds in my name.

**CANCELLATION OF INSURANCE AFTER DEFAULT.** I agree that if I am in default under the Agreement, you are authorized, at your election, to cancel any property insurance on the Property, to receive and give receipt for any unearned premiums on such insurance, to endorse in my name any check or draft for those premium rebates, and to apply those premium rebates as a credit against my obligations under this Agreement.

**ASSIGNMENT/TRANSFER OF ACCOUNT.** I cannot transfer or assign my Account or this Agreement to any other person, however, I agree you can assign or transfer this Agreement and the Security Instrument securing this Agreement.

**REMOVAL OF SECURITY INTEREST.** At any time when the Outstanding Balance secured by the Security Instrument is zero, you shall, at my written request, close the Account and execute a Satisfaction and provide me with a recorded copy. Absent my request, the Security Instrument will remain in full force and effect until the Repayment Period has expired and the Outstanding Balance is paid in full.

**INFORMATION REPORTED TO CONSUMER REPORTING AGENCIES.** Under the Fair Credit Reporting Act, I have the right to notify you if I believe you have reported inaccurate information about my Account to any consumer reporting agency. Such notices should be sent in writing and include my complete name, current address, Social Security number, telephone number, Account number, type of Account, specific item of dispute and the reason why I believe the information reported is in error. I must send my notice to: Wachovia Bank, N.A., P.O. Box 3117, Winston-Salem, NC 27102.

**GOVERNING LAW.** This Agreement will be governed by and interpreted in accordance with federal law and except as preempted by federal law, the laws of the state where the property securing this Agreement is located. Federal law that governs this Agreement includes 12 USC 85, which incorporates in part the laws of the State of North Carolina. If the Property securing the Agreement is located in Maryland, to the extent this Agreement is governed by Maryland law, this Agreement is governed by MD Code Ann., Commercial Law §12-901 et. seq. and applicable federal law.

**OTHER PROVISIONS.** Each of us who signed this Agreement is individually and jointly obligated for all payments due under this Agreement. In the event that the amount of interest on my Account exceeds the maximum permitted by law, you agree to repay me upon demand the amount paid which exceeds the maximum interest rate, or at your option, to reduce the then Outstanding Balance by the excess amount of interest. This Agreement constitutes the entire Agreement between the parties.

**DOCUMENTARY TAX.** For loans secured by real property located in Florida, the state documentary tax due on this Agreement has been paid on the Security Instrument securing this indebtedness.

**SEVERABILITY.** If any provision of this Agreement is found by a court to be invalid or unenforceable, such finding by itself will not render the remainder of this Agreement invalid or unenforceable. Therefore, even if a provision of this Agreement is found to be invalid or unenforceable, a court will enforce the remaining provisions.

**TAX CONSEQUENCES.** I understand I should consult my tax advisor regarding the tax deductibility of any interest and charges in connection with my Account. I understand that no representations or warranties have been made or will be made by either you or any of your employees or agents regarding the tax consequences of my Account, including the deductibility of interest. I agree that neither you nor any of your employees or agents will be liable if the interest on my Account is not deductible for any reasons.

**TRANSFER OR ASSIGNMENT.** You reserve the right to sell or transfer my Account and your rights and obligations under this Agreement and your rights under the Security Instrument to another lender, entity or person. Upon such sale or transfer, you will not be further obligated to provide me with Advances or to perform any other obligation under this Agreement. I understand and agree that my obligations are binding on my heirs and legal representatives.

**DELAY IN ENFORCEMENT.** I agree that you may delay or waive the enforcement of any of your rights under this Agreement without losing that right or any other right. Any delay or waiver of your rights does not affect your ability to enforce that right at any time in the future without advance notice to me.

INSTRUCTIONS REGARDING CONSUMER CREDIT REPORTS. If you request, I will give you any information needed to reevaluate my Account or my creditworthiness. You may conduct a periodic review of my Account, based on credit and financial information you may obtain or receive from me from time to time. You may, at any time, seek information about my financial condition from others including but not limited to obtaining a consumer report from a consumer reporting agency. You may use the information obtained from a consumer reporting agency to market additional products or services to me. If I do not wish you to obtain information from a consumer reporting agency to market additional products or services to me, I may opt out by calling 1-866-203-5722.

**CAUTION – IT IS IMPORTANT THAT I READ ALL PAGES OF THIS AGREEMENT BEFORE I SIGN IT. DO NOT SIGN THIS AGREEMENT IF IT CONTAINS ANY BLANK SPACES.**

By signing below, I agree to all of the above terms and acknowledge that I received a completed copy of this Agreement.

_____
Borrower **VIJAY B PATEL**

_____
Borrower **NILAM V PATEL**

| **FOR OFFICE USE ONLY** |
| --- |
| **Endorsement.** <br> Pay to the Order of _____ <br><br> Without Recourse <br> Wachovia Bank, National Association <br><br> By: _____ <br> Name: _____ <br> Title: _____ |

# YOUR BILLING RIGHTS

## KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, you should write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

Your name and Prime Equity Line Account Number.

- The dollar amount of the suspected error.

- Describe the error and explain, if you can, why you believe there is an error. If you need more information, you should describe the item you are not sure about.

**YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE.**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any Finance Charges related to any questioned amount. If we didn't make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**SPECIAL RULE FOR CREDIT CARD PURCHASES**

If you have a problem with the quality of property or services purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
- (a) You must have made the purchase in your home state or, if not within your home state within 100 miles of your current mailing address; and
- (b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant or if we mailed you the advertisement for the property or services.